## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER REDENSKI, | CASE NO. 1:13-cv-02707- GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 10, 11, 12, 13 |

## MEMORANDUM

### I.    Procedural Background

On May 17, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 94-99). On November 15, 2011, the Bureau of Disability Determination denied this application (Tr. 55-72), and Plaintiff filed a request for a hearing on January 3, 2012. (Tr. 79-80). On September 25, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 28-54). On October 16, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 12-27). On November 19, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 10-11), which the Appeals denied on September 10, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-9).

On November 5, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On February 18, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 10, 11). On March 31, 2014, Plaintiff filed a brief in support of his appeal ("Pl. Brief"). (Doc. 12). On May 2, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 13). On June 13, 2014, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 15, 16, 17). The matter is now ripe for review.

## II.    Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

*of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## III.   Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. §

1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that

he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a

person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also*

*Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds

that a Plaintiff is disabled or not disabled at any point in the sequence, review does

not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially

determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### IV. Relevant Facts in the Record

Plaintiff was born on August 17, 1968 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 22). 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a production line worker, packing machine operator, and forklift operator. (Tr. 22).

## A. Function Report and Testimony

On May 25, 2011, Plaintiff submitted a Function Report. (Tr. 136-49). He asserted that he could not work because of weakness, muscle spasms, pain, and lack of circulation in his leg. (Tr. 138). He reported that pain interferes with his sleep and his personal care. (Tr. 139). He indicated that pain precludes him from standing for more than five minutes and he cannot sit for long periods of time "due to bone remov[al] to repair [his] leg." (Tr. 139). He reported that he can cook complete meals but "with lots of preparation" he has to "sit." (Tr. 140). He admitted doing some household chores and yard work, but indicated that he only spent a "minimal" amount of time on them. (Tr. 141). He reported that he can drive, go out alone, and shop in convenience stores, although his wife "does the major shopping." (Tr. 141). He indicated that his hobbies were crossword puzzles, reading, and watching sports on television, but that he was "limited" in how long he can sit. (Tr. 142). He reported that he spends time with his family but does not go anywhere on a regular basis and does not go to social activities. (Tr. 143). He did not report any significant difficulties paying attention, following instructions, handling stress, or getting along with others. (Tr. 142-45). He reported that the pain in his back, legs, and feet was constant and had become unbearable in the past two years. (Tr. 146). He reported that he was taking Vicodin for his pain and that it caused no side effects. (Tr. 147).

On September 25, 2012, Plaintiff appeared and testified before the ALJ. (Tr. 30). He testified that he left his job in April of 2011 because it "closed down…the factor closed" and that he had received unemployment until March of 2012. (Tr. 37). He testified that swelling in his legs and a need to elevate them interfered with his ability to work. (Tr. 37-38). He explained his left leg was bowed and crooked and he had problems in the right leg because it was bearing all his weight. (Tr. 38). He reported that his leg symptoms were affected by the weather. (Tr. 45). He indicated that doctors attempted to surgically correct his leg by taking a bone graft from his pelvis. (Tr. 40). He admitted that his cane was not prescribed for him. (Tr. 40). Plaintiff also testified that impairments in his low back and left wrist affected his ability to work. (Tr. 40). He admitted he was right handed. (Tr. 41). He reported that his back "tightens up" after sitting for ten or fifteen minutes and he "move[s] around to loosen [his] back up." (Tr. 41). He admitted he could walk "around the block." (Tr. 42). He indicated that he can use a computer and denied side effects from medications. (Tr. 43).

## B. Medical Records

Plaintiff injured his left leg in a car accident in June of 1992. (Tr. 187-217). He was hospitalized through September 9, 1992, and underwent surgery on his leg, including a bone graft from his pelvis. *Id.* Plaintiff's arteries were also repaired, which restored his circulation. (Tr. 186, 204-05). Plaintiff was treated with

additional surgery in 1993 and physical therapy in 1994, although he was discharged for noncompliance. (Tr. 181-83, 333-45). Plaintiff returned to work until April of 2011, when the factory where he worked closed. (Tr. 27, 40, 49, 128-29).

The record contains no evidence of treatment from 1994 to February 5, 2010. On February 5, 2010, Plaintiff saw Dr. Richard Hiscox, M.D. complaining of left leg pain when "walking and constant." (Tr. 224-25). Plaintiff was only taking Tylenol to deal with his pain. (Tr. 224). Dr. Hiscox prescribed Vicodin, diet, weight loss, and daily exercise. (Tr. 225).

On February 15, 2010, X-rays of Plaintiff's tibia and fibula indicated:

[A] partially healed fracture of the mid left tibia. There is exuberant hyperostosis, and periosteal new bone formation. There is partial fusion of overlap, displaced fracture fragments. There is extensive cortical thickening of the fibula. This may also represent a partially healed fracture. The knee and ankle articulations are grossly anatomic. There is an apparent soft tissue defect of the dorsal calf. Please correlate with physical examination.

(Tr. 226).

Plaintiff followed-up with Dr. Hiscox in March, April, May, June, July, and October of 2010. (Tr. 233-61). In June of 2010, Plaintiff's gait and stance were normal, his back and leg examination was normal, he had no musculoskeletal crepitus, and no abnormalities were noted. (Tr. 240-42). Plaintiff consistently reported no back pain. (Tr. 240-42, 246, 252). Aside from decreased range of motion in the left leg, his physical examinations remained unremarkable. (Tr. 224-

25, 233-61). Plaintiff was treated only with Vicodin and recommendations to exercise daily and lose weight. (Tr. 234, 236, 238, 242, 248, 254, 260). Plaintiff did not receive any treatment again until April of 2011, when his physical examination was again unremarkable except for decreased range of motion  in his left leg and a limp. (Tr. 260). His Vicodin was continued. (Tr. 260).

On July 14, 2011, Vincent Drapiewski, M.D., conducted a consultative evaluation of Plaintiff (Tr. 264-70, 273-74, 276). Plaintiff complained of leg and back pain. (Tr. 264). He denied radiation of the pain, numbness, paresthesia, and weakness. (Tr. 265). Plaintiff had multiple abnormalities in his left leg and crepitus in his right leg. (Tr. 265-66, 272-74, 282).  He walked with a limp that favored his left leg but he did not need to use a walking aide (Tr. 265). Dr. Drapiewski cited X-rays of Plaintiff's tibia, fibula, and knee that revealed no acute fracture or dislocation (Tr. 273-74). Dr. Drapiewski opined that Plaintiff could lift/carry 25 pounds frequently; stand/walk four hours with unlimited sitting in an eight-hour workday. (Tr. 267-68).

From April of 2011 through September of 2012, Plaintiff was treated only with four visits every three months to Dr. Hiscox. (Tr. 299-317). At each, Plaintiff's physical examination was normal except for decreased range of motion and a limp and his medications were continued. *Id.*

X-rays of Plaintiff's lumbar spine revealed no fracture or dislocation, mild diffuse degenerative changes, and mild scoliosis (Tr. 323).

On October 19, 2011, state agency physician Dr. Kumar Swami, M.D., reviewed Plaintiff's file and issued an opinion. (Tr. 282-90).  Dr. Swami found Plaintiff's condition had not meet or equal Listing § 1.06 of the Listings because he had only a mild limp and there was no evidence of a severe ambulatory deficit (Tr. 282). Dr. Swami opined that Plaintiff could a range of medium work. (Tr. 284-87).

On May 9, 2012, John Kline, M.D., performed a physiatric reevaluation of Plaintiff (Tr. 324-25). Plaintiff reported that he was doing "fairly well," although his "lower extremity [was] still quite painful." (Tr. 324).  Examination indicated "4 to 4+/5 strength throughout," normal sensation and reflexes, significant soft tissue defects and other abnormalities in the left leg, tenderness in the sacroiliac region, and a positive facet compression test. (Tr. 324). The straight-leg raising test was negative (Tr. 324). Plaintiff reported significant tenderness over the medial joint of his left knee and a positive McMurry's test. (Tr. 324-25). Plaintiff had been taking methadone instead of Vicodin. (Tr. 342-25). Dr. Kline discontinued his methadone and prescribed him a Duragesic patch. (Tr. 325). Plaintiff did "not wish to proceed" with surgery. (Tr. 325).

### C. ALJ Findings

On October 16, 2012, the ALJ issued the decision. (Tr. 24). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 20, 2011, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff's status post open reduction internal fixation of the left tibia and fibula, degenerative joint disease of the left knee, mild degenerative disc disease of the lumbar spine, left sacroiliac dysfunction and obesity medically determinable and severe. (Tr. 17). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 18). The ALJ found that Plaintiff had the RFC to:

> [P]erform less than the full range of sedentary work as defined in 20 CFR 404.1567(a). While the claimant is capable of lifting and carrying up to ten pounds occasionally and two to three pounds frequently with sitting capability of six hours and standing or walking of two hours in an eight-hour day, the claimant must have the ability to sit or stand every thirty minutes. He can never climb ropes, ladders or scaffolds. He must avoid concentrated exposure to unprotected heights and moving machinery. The claimant is limited to occupations that involve no more than occasional climbing ramps and stairs. He must also avoid concentrated exposure to wetness and extreme cold. Lastly, he is limited to no more than occasional use of the left lower extremity for operation of foot controls or pedals.

(Tr. 19).

A step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 22). At step five, in accordance with the VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 23). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 24).

## V.     Plaintiff Allegations of Error

## A. The ALJ's Listing Assessment

Plaintiff asserts that the ALJ erred in finding that he did not meet Listing 1.06. (Pl. Brief at 6) (citing 20 C.F.R. § 404, Subpart P, Appendix 1, §1.06). Listing 1.06 requires:

> **Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones.** With:
> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
> and
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

*Id.* Plaintiff notes that the medical evidence confirms that Plaintiff had a fracture of the tibia that did not have a solid union, meeting Section (A) of Listing 1.06.

However, there is no evidence that Plaintiff has an inability to ambulate effectively. If Plaintiff cannot establish an inability to ambulate, he cannot meet Listing 1.06, because "a claimant must point to evidence which establishes all of its criteria to demonstrate legal error warranting a remand." J*ohnson v. Comm'r of Soc. Sec.*, 263 F. App'x 199, 202–203 (3d Cir.2008). An inability to ambulate effectively is specifically defined in the Regulations:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both

upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § 404, Subpart P, Appendix 1, §1.00(B)(2)(b).

Here, Dr. Sewani opined that Plaintiff did not have an inability to ambulate because he had only a "slight limp." (Tr. 282). The record consistently documented that Plaintiff's gait was "normal" aside from a limp. (Tr. 242, 248, 254, 260, 301, 306, 311, 316, 319). Plaintiff acknowledged that he had never been prescribed a cane. (Tr. 40). Moreover, ineffective ambulation generally requires the use of two canes, not just one cane. 20 C.F.R. § 404, Subpart P, Appendix 1, §1.00(B)(2)(b).

A reasonable mind could accept Dr. Sewani's opinion, the lack of objective evidence, and Plaintiff's use of only one, non-prescribed cane to conclude that he did not meet the requirements of Listing 1.06. Substantial evidence supports the ALJ's Listing assessment.

## B. The ALJ's Credibility Assessment

Plaintiff generically asserts that the ALJ erred in assessing his credibility. (Pl. Brief at 8-9). Specifically, Plaintiff asserts that an ALJ must point to contrary medical evidence to reject his credibility. (Pl. Brief at 8-9). Plaintiff also asserts that a long and continuous work history supports a claimant's credibility. (Pl. Brief at 9). Finally, Plaintiff alleges that:

> [T]he Plaintiff has presented evidence of a long history of suffering from an extremely debilitating fracture to his tibia, which after almost two decades has not resulted in a union of the fracture. Examinations revealed several objective findings including an angular deformity of the tibia, marked crepitus on range of motion testing and tissue loss. There is substantial objective evidence that supports the severity of the Plaintiff's complaints. When the Plaintiff's complaints are accepted, then there is no way that he could sustain an eight hour work day.

(Pl. Brief at 9).

When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P; *see also* 20 C.F.R. § 416.929. "Under this evaluation, a variety of factors are considered, such as: (1) 'objective medical evidence,' (2) 'daily activities,' (3) 'location, duration, frequency and intensity,' (4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain." *Daniello v. Colvin*, CIV. 12-1023-GMS-MPT, 2013 WL 2405442 (D. Del. June 3, 2013) (citing  20 C.F.R. § 404.1529(c)).

Plaintiff focuses on medical evidence that establishes a diagnosis of a tibia fracture and symptoms arising from that injury. *Supra.* However, Plaintiff does not discuss any work-related functional limitations. *Supra.* Moreover, Plaintiff does not allege any reason to disturb the ALJ's credibility assessment. Objective medical evidence is only one factor that the ALJ considers in assessing credibility. SSR 96-7p. Here, the ALJ also found that Plaintiff's ability to continue working after his accident, the fact that he only stopped working in April of 2011 when his employer closed, and Plaintiff's receipt of unemployment benefits until March 2012, which meant that he had certified that he was willing, ready, and able to work, undermined his credibility.  (Tr. 19, 21, 37).  Plaintiff's statements that he was "able to work" through May 2012 to receive unemployment is inconsistent with his claims that he has been disabled since April 20, 2011. (Tr. 17). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR

96-7p. Thus, the ALJ properly considered these statements in assessing Plaintiff's credibility.

The ALJ further found that Plaintiff's treatment had only conservative treatment after his 1992 injury, with no treatment until February 5, 2010, only monthly treatment through October of 2010, a six month gap from October of 2010 to April of 2011, and treatment with his primary care physician only four times from April of 2011 and September of 2012. (Tr. 20, 224-25, 233-61, 298-321). This is a proper basis to reject Plaintiff's credibility:

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

> On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints…

SSR 96-7p.

Finally, the ALJ found that the medical evidence undermined the credibility of Plaintiff's claims. The ALJ noted that Plaintiff's exams were generally unremarkable throughout the relevant period. (Tr. 20-21, 225, 233-38, 240-42, 246-48, 252-54, 300-01, 304-06, 309-11, 314-16, 319-21). Additionally, all of the medical opinions in the file indicated that Plaintiff could perform a range of work.

(Tr. 267-68, 284-87). This undermines Plaintiff's claims that he suffers work-
preclusive functional limitations. SSR 96-7p.

Plaintiff has not challenged the ALJ's conclusions regarding his
conservative treatment, his inconsistent claims in order to receive unemployment,
or the consistent medical opinions that he could work. Instead, Plaintiff focuses on
objective evidence that shows his diagnoses and symptoms. However, this only
one factor in evaluating her credibility. A reasonable mind could accept Plaintiff's
conservative treatment, the lack of objective evidence, Plaintiff's statements that
he was "able to work" in order to receive unemployment, the consistent medical
opinions that Plaintiff could perform work, and the absence of any medical opinion
supporting Plaintiff's claims that he could not work, to find that Plaintiff was not
fully credible. Substantial evidence supports the ALJ's credibility assessment.

## VII.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings
of fact in determining whether Plaintiff met the criteria for disability, and the
findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c;
*Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552;
*Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503.
Substantial evidence is less than a preponderance of the evidence, but more than a
mere scintilla of evidence. It does not mean a large or significant amount of

evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.

Dated: March 31, 2015        *s/Gerald B. Cohn*
GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE